# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | |
|---|---|
| LINDT & SPRUNGLI (NORTH AMERICA) INC., LINDT & SPRUNGLI (USA), INC., GHIRARDELLI CHOCOLATE COMPANY, AND RUSSELL STOVER CHOCOLATES LLC, | ) ) ) ) ) ) ) |
| Plaintiffs, | ) **JURY TRIAL DEMANDED** ) ) |
| vs. | ) Case No. 4:22-cv-00384-BP ) |
| GXO WAREHOUSE COMPANY, INC., F/K/A XPO LOGISTICS SUPPLY CHAIN, | ) ) ) ) |
| Defendant. | ) |

## COUNTERCLAIMS OF GXO WAREHOUSE COMPANY, INC.

COMES NOW Defendant/Counter-Plaintiff GXO Warehouse Company, Inc. ("GXO"),[1] and for its Counterclaims, alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1. GXO is a corporation incorporated under the laws of the State of Iowa, with its principal place of business in North Carolina. Accordingly, GXO is deemed to be a citizen of the States of Iowa and North Carolina.

2. Plaintiff/Counter-Defendant Lindt & Sprungli (North America) Inc. ("Lindt NA") is a corporation incorporated under the laws of the State of Delaware with its principal place of

---

[1] Plaintiffs/Counter-Defendants' Complaint refers to "GXO Warehouse Company, Inc. f/k/a XPO Logistics Supply Chain." This is inaccurate. GXO Warehouse Company, Inc. was formerly known as "Jacobson Warehouse Company, Inc." Jacobson Warehouse Company, Inc had a d/b/a name of XPO Logistics Supply Chain. GXO Warehouse Company, Inc. has a d/b/a name of "GXO Logistics."

business at 4717 Grand Ave., Ste. 700, Kansas City, Missouri. Accordingly, Lindt NA is deemed to be a citizen of the States of Delaware and Missouri.

3. Plaintiff/Counter-Defendant Lindt & Sprungli (USA), Inc. ("Lindt USA") is a New York corporation with its place of business at One Fine Chocolate Place, Stratham, New Hampshire. Accordingly, Lindt USA is deemed to be a citizen of the States of New York and New Hampshire.

4. Plaintiff/Counter-Defendant Ghirardelli Chocolate Company ("Ghirardelli") is a corporation incorporated under the laws of the State of California with its principal place of business at 1111 139th Avenue, San Leandro, California. Accordingly, Ghirardelli is deemed to be a citizen of the State of California.

5. Plaintiff/Counter-Defendant Russell Stover Chocolates, LLC ("Russell Stover") is a Missouri limited liability company with its principal place of business at 4900 Oak Street, Kansas City, Missouri. Russell Stover is wholly owned by Lindt USA, which is a citizen of the States of New York and New Hampshire. Accordingly, Russell Stover is deemed to be a citizen of the States of New York and New Hampshire.

6. GXO is a warehouse management and logistics company that provides warehouse management and other logistical services to its clients.

7. Lindt NA is the parent company of Plaintiffs/Counter-Defendants Ghirardelli, Russell Stover, and Lindt USA (collectively, the "Operating Subsidiaries"). Each of the Operating Subsidiaries was, at all relevant times, a manufacturer and/or seller of chocolate products and other confections.

8. This Court has jurisdiction over this civil action under 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists between the parties and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

9. Venue is proper in this District because Plaintiffs/Counter-Defendants have consented to venue by filing their Complaint here.

## FACTS COMMON TO ALL COUNTS

10. Ghirardelli and a GXO predecessor, Arnold Logistics, LLC, executed a "Services Agreement" for warehouse management services in 2007. The Services Agreement governed GXO's provision of warehouse management services at Ghirardelli's warehouse facility in Lathrop, California (the "Lathrop Warehouse") and not the Tracy, California warehouse (the "Tracy Warehouse"), which was not even built until a decade later in 2017 and is the subject of the parties' disputes. The Services Agreement was amended a number of times, ultimately extending the termination date until April 30, 2018. GXO provided services to Ghirardelli at the Lathrop Warehouse for many years, and Ghirardelli was satisfied with GXO's management and operation of the Lathrop Warehouse.

11. In March 2017, Lindt NA issued a request for proposal ("RFP") to a number of third-party logistics providers to open and operate the new Tracy Warehouse. The RFP indicated that the relationship with the third-party logistics provider would be with, and managed by, Lindt NA and involve handling inventory from the three Operating Subsidiaries.

12. At the conclusion of the RFP process, Lindt NA selected GXO, in part based upon GXO's performance record with Ghirardelli at the Lathrop Warehouse.

13. After completion of the RFP process, GXO and Lindt NA executed a Letter of Intent dated June 2, 2017 (the "LOI"). A copy of the LOI was attached to the Complaint as

Exhibit 5. The LOI memorialized the parties' intent to enter into a new services agreement (the "Definitive Agreement") for the Tracy Warehouse, which the parties anticipated would become operational in the first half of 2018.

14. The LOI set forth a number of expected terms for the new agreement, including a duration of five years. The LOI expressed the parties' clear intent that the new Tracy Warehouse would be operated under the new Definitive Agreement and not the then decade-old Services Agreement. The LOI expired by its own terms on September 30, 2017.

15. The LOI also memorialized the parties' agreement that GXO would need to begin "preliminary" services to facilitate the opening of the Tracy Warehouse and authorized GXO to invoice Lindt NA for such services. GXO performed the requested preparatory and preliminary services.

16. Agreement on the Definitive Agreement, however, was not forthcoming due to Lindt NA's intransigence during the parties' negotiations. Yet, in a remarkable showing of good faith, and based on Lindt NA's promises to reach an agreement, GXO continued to provide services in preparation for the opening of the Tracy Warehouse even after the LOI expired on September 30, 2017.

17. On May 22, 2018—nearly a year after the LOI was executed and eight months after it expired—Lindt NA and GXO executed the First Amendment to the Letter of Intent (the "LOI Amendment"). A copy of the LOI Amendment was attached to the Complaint as Exhibit 6.

18. The LOI Amendment provided several key terms. First, it retroactively applied to October 1, 2017, thereby treating the LOI as if it had "been continuously in force and effect without interruption" since the September 30, 2017 termination date in the original LOI.

4

19. Second, the LOI Amendment reiterated the parties' intent to enter into the Definitive Agreement.

20. Third, Lindt NA recognized that GXO needed to conduct additional start-up services to provide for the initiation of operations at the Tracy Warehouse. These "Start-Up Services" included, but expressly were not limited to: hiring, on-boarding, and training associates; implementing a warehouse management system ("WMS")—the computerized system that tracks inventory; acquiring material handling equipment ("MHE"), such as forklifts, for the Warehouse; and conducting other services necessary to the start-up of the Tracy Warehouse.

21. Finally, while the LOI Amendment stated that the Services Agreement would apply to services GXO performed at either the Tracy or Lathrop Warehouses, it made clear that the repeated extension of the Services Agreement would cease, and the Services Agreement (and the LOI) would no longer be of any force or effect when the First Amendment expired on June 30, 2018.

22. Lindt NA and GXO, however, remained unable to reach terms on the Definitive Agreement before the LOI Amendment expired. Belying its current complaints, Lindt NA still wanted GXO to manage the Tracy Warehouse while Lindt NA and GXO continued to negotiate and asked GXO to do so without a written contract after the LOI Amendment terminated on June 30, 2018. And again, in a showing of good faith and based upon Lindt NA's representations that it was committed to reaching a Definitive Agreement, GXO continued its work in preparing the Tracy Warehouse to open and, upon opening, operating the facility.

23. GXO managed the Tracy Warehouse without a written contract from July 1, 2018 until May 17, 2019—almost a full year <u>after</u> the Services Agreement and the LOI Amendment expired. During the relevant time period, GXO invoiced Lindt NA for the goods and services

GXO provided and, at Lindt NA's direction and for its convenience, the Operating Subsidiaries as well.

24. Lindt NA and/or the Operating Subsidiaries owe GXO for the value of the goods and services requested from GXO, provided by GXO, and knowingly accepted by them. This arrangement continued until Lindt NA transitioned management services to a new third party logistics provider, Metro Supply Chain Group ("Metro").

25. GXO provided warehousing services and related goods with respect to the preparation of, and operations at, the Tracy Warehouse. These goods and services included, but were not limited to: (1) hiring, onboarding, and training of warehouse workers; (2) implementation of the WMS; (3) acquisition of the MHE and other equipment necessary for warehouse operations; and (4) managing operations at the Tracy Warehouse.

26. GXO provided goods and services worth millions of dollars in preparing the Tracy Warehouse to open and then managing and operating the facility. GXO regularly invoiced Lindt NA and, at Lindt NA's direction and for its convenience, the Operating Subsidiaries, for these goods and services.

27. To date, Plaintiffs/Counter-Defendants have failed to pay GXO's invoices and for other costs, and expenses GXO incurred in providing the goods and services requested and accepted by Lindt NA and/or the Operating Subsidiaries. The invoices and other charges total millions of dollars. The value of the services and goods provided by GXO and the indebtedness owed to it will be proven at trial, but is no less than the principal amount of $12,388,875.29.

28. Plaintiffs/Counter-Defendants <u>never</u> objected to GXO's invoices, including the necessity of the services or goods provided or the total amount charged, until <u>after</u> GXO stopped managing the Tracy Warehouse. In short, after stringing GXO along with promises of a

Definitive Agreement and continuing to request that GXO provide goods and services at the Tracy Warehouse, Lindt NA decided to "stiff" GXO for those valuable good and services once GXO was out of the Tracy Warehouse and Lindt NA enjoyed all the negotiating leverage.

29. Lindt NA and/or the Operating Subsidiaries are liable to GXO. Additionally, and in the alternative, if it is found that the parties were operating under an express and/or implied-in-fact contract, Lindt NA and/or the Operating Subsidiaries breached the terms of those contracts.

30. Lindt NA and/or the Operating Subsidiaries have also converted or otherwise wrongfully retained equipment owned by GXO that was used at the Tracy Warehouse after the transition to the new service provider, Metro. GXO made repeated demands for either the return of the equipment or for Lindt NA and/or the Operating Subsidiaries to pay GXO for the equipment. Lindt NA and/or the Operating Subsidiaries have refused to do either and, based upon information and belief, continue to use GXO's equipment at the Tracy Warehouse. GXO is entitled to the value of the equipment at the time of the conversion or other misappropriation plus punitive damages as permitted by law.

## COUNT I
## (UNJUST ENRICHMENT)

31. GXO specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 30 as though set forth here in full.

32. GXO conferred a benefit on Lindt NA and/or the Operating Subsidiaries by providing valuable goods and services at the Tracy Warehouse as requested by Lindt NA and/or the Operating Subsidiaries.

33. Lindt NA and/or the Operating Subsidiaries appreciated the benefit of GXO's provision of goods and services at the Tracy Warehouse, accepted those goods and services, and retained the benefit of those goods and services without paying GXO the sums owing to it.

34. In performing warehousing services, GXO was not acting as a volunteer, and Lindt NA and/or the Operating Subsidiaries accepted the benefits GXO furnished without payment of such services.

35. As a legal result thereof, Lindt NA and/or the Operating Subsidiaries unjustly enriched themselves at GXO's expense in a principal amount to be proven at trial, but in excess of millions of dollars. It would be unjust and inequitable for Lindt NA and/or the Operating Subsidiaries to be allowed to retain the benefits of GXO's goods and services without being ordered to pay their reasonable value, plus applicable interest thereon.

## COUNT II

**(ACTION ON ACCOUNT/COMMON COUNT FOR REASONABLE VALUE)**

36. GXO specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 35 as though set forth here in full.

37. Lindt NA and/or the Operating Subsidiaries requested that GXO furnish certain goods and services related to the management and operation of the Tracy Warehouse.

38. GXO accepted these requests and furnished the requested goods and services by performing warehouse management and operations services at the Tracy Warehouse and providing goods related to the operation of the warehouse.

39. GXO regularly invoiced Lindt NA and, at Lindt NA's direction and for its convenience, the Operating Subsidiaries for the requested goods and services it provided.

8

40. GXO's invoices and other charges for the goods and services it provided to Lindt NA and/or the Operating Subsidiaries at the Tracy Warehouse were reasonable.

41. The invoices and other charges were not paid, despite them being correct, and GXO is entitled to recover the principal amount to be proven at trial, plus interest thereon.

## COUNT III

## (QUANTUM MERUIT)

42. GXO specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 41 as though set forth here in full.

43. Lindt NA and/or the Operating Subsidiaries requested that GXO furnish goods and services related to the management and operation of the Tracy Warehouse.

44. GXO accepted these requests and furnished the requested goods and services by performing warehouse management and operations services at the Tracy Warehouse and providing goods related to the operation of the warehouse.

45. GXO conferred a benefit on Lindt NA and/or the Operating Subsidiaries by providing management and operations services at the Tracy Warehouse and the related goods.

46. Lindt NA and/or the Operating Subsidiaries appreciated the benefit of GXO's provision of goods and services at the Tracy Warehouse, accepted those goods and services, and retained the benefit of those goods and services without paying GXO the sums owing to it.

47. In performing warehousing services and providing related goods, GXO was not acting as a volunteer, and Lindt NA and/or the Operating Subsidiaries accepted the benefits of that which GXO has furnished without payment.

48. The reasonable value of GXO's services was in the millions of dollars.

49. GXO's has demanded payment of the reasonable value of its services and the goods it provided, but has not been paid.

50. It would be unjust and inequitable for Lindt NA and/or the Operating Subsidiaries to be allowed to retain the benefits of the goods and services without being ordered to pay the reasonable value to be proven at trial, plus applicable interest thereon.

## COUNT IV
## (ACCOUNT STATED)

51. GXO specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 50 as though set forth here in full.

52. GXO and Lindt NA entered into a relationship regarding the Tracy Warehouse whereby GXO provided goods and services to Lindt NA and/or the Operating Subsidiaries at the Tracy Warehouse at their request.

53. Lindt NA and/or the Operating Subsidiaries promised to pay GXO for those goods and services.

54. In the course of that relationship, GXO regularly invoiced or otherwise charged Lindt NA, and at Lindt NA's direction and for its convenience, the Operating Subsidiaries, for the warehouse management and operations services and related goods that GXO provided at the Tracy Warehouse.

55. As a consequence of those transactions, an account was stated in writing by and between GXO and Lindt NA and/or the Operating Subsidiaries, in which it was agreed that Lindt NA and/or the Operating Subsidiaries were indebted to GXO in an amount to be proven at trial, but in the millions of dollars.

56. No part of said sum has been paid, although demand therefor has been made, and therefore remains due plus interest, owing and unpaid from Lindt NA and/or the Operating Subsidiaries.

## COUNT V

### (OPEN BOOK ACCOUNT FOR AGREED VALUE OF SERVICES RENDERED)

57. GXO specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 56 as though set forth here in full.

58. GXO and Lindt NA entered into a relationship regarding the Tracy Warehouse whereby GXO provided goods and services to Lindt NA and/or the Operating Subsidiaries on a consistent basis at the Tracy Warehouse at their request.

59. Lindt NA and/or the Operating Subsidiaries promised to pay GXO for those goods and services.

60. GXO kept an account of the debits and credits involved in the transactions between GXO and Lindt NA and/or the Operating Subsidiaries for goods and services at the Tracy Warehouse.

61. GXO regularly invoiced or otherwise charged Lindt NA and, at Lindt NA's direction and for its convenience, the Operating Subsidiaries, for the warehouse management and operations services and related goods that GXO provided at the Tracy Warehouse.

62. An open book account was stated in writing by and between GXO and Lindt NA and/or the Operating Subsidiaries, in which it was agreed that they were indebted to GXO in an amount to be proven at trial, but in the millions of dollars.

63. No part of said sum has been paid, although demand therefor has been made, and there remains due, owing and unpaid from Lindt NA and/or the Operating Subsidiaries to GXO in an amount to be proven at trial, but in the millions of dollars, together with interest thereon.

## COUNT VI
## (CONVERSION)

64. GXO specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 63 as though set forth here in full.

65. As set forth above, Lindt NA and/or the Operating Subsidiaries have failed to pay GXO for warehousing services rendered at the Tracy Warehouse.

66. GXO is the owner of warehousing equipment related to the operations of the warehousing services at the Tracy Warehouse (the "Subject Property").

67. GXO demanded that Plaintiffs/Counter-Defendants surrender the Subject Property to GXO, but Plaintiffs/Counter-Defendants failed to return the Subject Property to GXO.

68. Plaintiffs/Counter-Defendants remain in possession of the Subject Property, which they refuse to return to GXO. Plaintiffs/Counter-Defendants exercise control over the Subject Property, which, upon information and belief, they continue to use for their own purposes at the Tracy Warehouse. These actions demonstrate Plaintiffs/Counter-Defendants' intent to exercise control of the Subject Property.

69. As a result, Plaintiffs/Counter-Defendants have deprived GXO of the right to possession of the Subject Property and wrongfully converted the Subject Property.

70. Plaintiffs/Counter-Defendants' conversion of the Subject Property has damaged GXO in an amount to be determined at trial, together with interest thereon.

71. Plaintiff/Counter-Defendants' blatant, intentional refusal to return the Subject Property or to pay GXO its fair value, despite both GXO's requests and a lack of dispute as to ownership of the Subject Property, demonstrates evil motive and malice on the part of Plaintiff/Counter-Defendants and a willful, reckless, and conscious disregard for GXO's rights to the property. GXO is entitled to punitive damages for Plaintiffs/Counter-Defendants' misconduct.

## COUNT VII

## (IN THE ALTERNATIVE, BREACH OF CONTRACT)

72. GXO specifically realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 30 as though set forth here in full.

73. As set forth in its Motion to Dismiss filed contemporaneously herewith, GXO denies that, as a legal or factual matter, an implied or express contract existed between the parties to continue the Services Agreement beyond June 30, 2018. In the alternative, however, should it be determined that there was such an express or implied contract between GXO and one or more of the Plaintiffs/Counter-Defendants for services at the Tracy Warehouse (as alleged in the Complaint), under the terms of that contract, GXO agreed to perform services at the Tracy Warehouse and provide related goods, and the applicable Plaintiffs/Counter-Defendants agreed to pay GXO for those goods and services.

74. Plaintiffs/Counter-Defendants therefore had a contractual obligation to pay GXO for the goods and services it provided at the Tracy Warehouse.

75. GXO performed the services and provided the goods at the Tracy Warehouse in accordance with the contract.

76. Plaintiffs/Counter-Defendants breached the contract by failing to pay GXO for the goods and services it provided at the Tracy Warehouse.

77. Due to Plaintiffs/Counter-Defendants' breach of contract, GXO has been damaged in an amount to be proven at trial, but no less than millions of dollars, together with interest thereon.

## **PRAYER FOR RELIEF**

WHEREFORE, GXO prays for judgment against Plaintiffs/Counter-Defendants as follows:

1. Judgement in GXO's favor and against Plaintiffs/Counter-Defendants;

2. An award of compensatory damages in an amount to be proven at trial, plus applicable pre-judgment and post-judgment interest thereon;

3. An award of punitive damages for the conversion of GXO's property;

4. An award of fees, costs, and reasonable attorneys' fees incurred by GXO; and

5. For any such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

GXO hereby demands a trial by jury for all issues so triable.

Respectfully submitted,

THOMPSON COBURN LLP

By /s/ Lawrence C. Friedman
Lawrence C. Friedman, # 34382
Mark A. Mattingly, # 56536
One US Bank Plaza
St. Louis, MO 63101
(314) 552-6000
(314) 552-7000 (facsimile)
lfriedman@thompsoncoburn.com
mmattingly@thompsoncoburn.com

*Attorneys for GXO Warehouse Company, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 18, 2022, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to all counsel of record.

/s/ Lawrence C. Friedman