**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION**

| | | |
|---|---|---|
| LINDT & SPRÜNGLI (NORTH AMERICA), INC., *et al.*, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 22-00384-CV-W-BP |
| GXO WAREHOUSE COMPANY, INC., f/k/a XPO LOGISTICS SUPPLY CHAIN, | ) | |
| Defendant. | ) | |

**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT**

This case arises from the parties' agreement that Defendant[1] (a business logistics company) would provide business operations and logistics services to Plaintiffs[2] (a group of chocolate manufacturers) at a warehouse in Tracy, California. The parties' business relationship soured, and in this case each side asserts claims against the other.

Now pending are both Defendant's Motion for Summary Judgment, (Doc. 169), and Plaintiffs' Motion for Partial Summary Judgment, (Doc. 180).[3] The Court finds the Record contains genuine disputes of material fact and neither side is entitled to judgment as a matter of law and thus will deny both motions.

## I. Legal Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

[1] Defendant is GXO Warehouse Company; it was formerly known as XPO Logistics Supply Chain, and it is a successor to Arnold Logistics LLC. The Court generally refers to these entities as "Defendant."

[2] Plaintiffs are: (1) Lindt & Sprungli (North America), Inc.; (2) Lindt & Sprungli (USA), Inc.; (3) Ghirardelli Chocolate Company; and (4) Russell Stover Chocolates, LLC. The Court refers to these entities collectively as "Plaintiffs." Where necessary, the Court refers to the first entity as "Lindt" or "Lindt NA," the third entity as "Ghirardelli," and the second, third, and fourth entities collectively as the "Lindt Manufacturers."

[3] Citations are to the Court's CM/ECF docket system and the page numbers generated by it.

Civ. P. 56(a). The Court must view the evidence in the light most favorable to the non-movant, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). The non-movant may not simply deny the allegations but must point to evidence in the Record demonstrating the existence of a genuine and material factual dispute. Fed. R. Civ. P. 56(c).

**II. Summary Judgment Record**

The parties have presented hundreds of facts yet agree on few of them. Their responses reveal conflicting evidence, as well as legitimate disagreements regarding the significance of, and inferences to be drawn from, various pieces of evidence. All these matters can be resolved only by a jury. It may be that the jury agrees with the moving party on an issue; however, the Court is obligated to view the facts (including any inferences to be drawn from the facts) in the light most favorable to the non-moving party. Because the evidence must be viewed in the non-moving party's favor, the Court does not discuss all the evidence that might favor the moving party. Furthermore, the Court's description of the Record should not be construed as factual findings. Consistent with this, the Court finds the parties do not genuinely controvert the facts discussed below, as the purported denials provide explanation or context about the weight or meaning of the evidence or address different propositions altogether. Thus, the Court cites the Record only where particularly relevant or helpful.

In summary, the Record contains evidence of the following. In 2007, Plaintiff Ghirardelli and Defendant signed a services agreement for Defendant to provide warehouse management services at a warehouse in Lathrop, California (the "Services Agreement"). In 2017, Plaintiffs issued a request for proposals (the "RFP") to provide warehouse management services at a warehouse in Tracy, California. Regarding its warehouse management system—known as

WM10—Defendant's RFP response stated its "proven integration platform and methodology will ensure successful integration for smooth and rapid implementation."

Plaintiffs selected Defendant to operate the Tracy warehouse, and ultimately the parties agreed to an amended letter of intent (the "LOI Amendment") while they negotiated a more comprehensive definitive agreement. In the LOI Amendment, the parties agreed to amend the Services Agreement so that it also encompassed the Tracy warehouse, and Defendant agreed to provide the services necessary to begin operating the Tracy warehouse, such as hiring and training employees, implementing the WM10 system, and the like. By its terms, the LOI Amendment expired on June 30, 2018, with the parties having not yet reached a definitive agreement but continuing to negotiate to reach one.

Although the LOI Amendment expired, the parties continued to work towards a "Go Live" date of August 6, 2018, when Defendant would begin operating the Tracy warehouse. On the Go Live date Defendant did not ship any of Plaintiffs' products out of the Tracy warehouse, and thereafter similar problems persisted.

In December 2018, Defendant sent Plaintiffs a Warehouse Receipt, stating its terms—which included a provision limiting Defendant's liability—would be effective as of January 1, 2019. Both before and after that January 1 date, Plaintiffs sent Defendant emails expressly rejecting the Warehouse Receipt. (Doc. 203-18, p. 2; Doc. 203-19, p. 2.) Throughout these events, the parties continued to work together at the Tracy warehouse.

Plaintiffs terminated Defendant's involvement at the Tracy warehouse on May 17, 2019, when it transferred operations to a new services provider—Metro. After Defendant's termination, equipment which was owned by Defendant and critical to warehouse operations remained in the

Tracy warehouse. The parties' negotiations about this equipment were unsuccessful, such that Plaintiffs have not paid for the equipment but nonetheless continue to use it.

This case followed, in which Plaintiffs and Defendant assert many claims against each other. Defendant previously moved to dismiss some of Plaintiffs' claims, and the Court's resulting Order (1) addressed some issues that are relevant here and (2) dismissed Plaintiffs' Count Two asserting a breach of the covenant of good faith and fair dealing. (*See* Doc. 71.) Accordingly, Plaintiffs' operative First Amended Complaint asserts the following claims:

- Count One: Breach of contract;
- Count Three: Negligence, alleged in the alternative to the breach of contract claim;
- Count Four: Fraud;
- Count Five: Negligent misrepresentation; and
- Count Six, alleged by Ghirardelli only: Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code, § 17200 *et seq.* ("UCL").

(Doc. 33.) As relevant here, Defendant asserts a counterclaim for conversion in which it seeks punitive damages. (Doc. 76.)

## III. Defendant's Motion for Summary Judgment

Defendant's briefing does not address the counts Plaintiffs have alleged in numerical order, and the Court addresses Defendant's arguments in the same sequence as its briefing.

The parties' briefing shows they agree California law governs each of Plaintiffs' claims, and the Court accepts the parties' position.

### a. Plaintiffs' Fraud and Negligent Misrepresentation Claims

Counts Four and Five assert claims for fraud and negligent misrepresentation based on Defendant's statements and omissions about its ability to operate the Tracy warehouse. (Doc. 33,

¶¶ 192-220, 221-230.) The parties' briefing discusses these claims together, and the Court will take the same approach.

"The elements of fraud … are (1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage." *Conroy v. Regents of Univ. of California*, 203 P.3d 1127, 1135 (Cal. 2009). "The elements of a negligent misrepresentation are (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Tindell v. Murphy*, 232 Cal. Rptr. 3d 448, 458 (Cal. Ct. App. 2018) (cleaned up).

Plaintiffs' claims arise from three different categories of statements or omissions.[4] (Doc. 170, pp. 40-48.) The first is Defendant's statements in its RFP response—which, as relevant here, concern its experience with the WM10 system to be used at the Tracy warehouse. Defendant argues Plaintiffs cannot present evidence that it knew its statements regarding the reliability of technology to be used at the Tracy warehouse were false or that it made those statements with reckless disregard for their accuracy. (Doc. 170, pp. 41-42.) However, Plaintiffs need not prove Defendant knew the alleged statements were false. "[E]vidence of the falsity of a representation is sufficient to raise a triable issue of fact as to the elements of knowledge of the falsity." *Hart v. Browne*, 103 Cal. App. 3d 947, 957 (Cal. Ct. App. 1980). "False representations made recklessly and without regard for their truth to induce action by another are the equivalent of

---

[4] Both parties make arguments about whether Defendant's business situation did or did not prompt it to make misrepresentations and omissions, (Doc. 207-1, p. 3; Doc. 226, pp. 158-160), but those arguments do not factor into the Court's analysis and so it does not address them here.

misrepresentations knowingly and intentionally uttered." *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 953 (Cal. 1997).

Further, the parties dispute several material facts related to the language contained in the RFP. As an example, Plaintiffs argue Defendant's RFP response stating its "proven integration platform and methodology will ensure successful integration for smooth and rapid implementation" was either false or, at a minimum, made with reckless disregard for its accuracy. Plaintiffs explain Defendant agreed to implement WM10 with Nulogy but Tracy was the first time it had integrated those systems, (Doc. 203-25, pp. 3, 6-7, 8; Doc. 203-139, p. 2), and thus the integration was not "proven." In response, Defendant argues it had successfully used "WM10 and Nulogy, as well as the other IT components" numerous times in other warehouses, (Doc. 226, p. 163), and thus the platform was "proven." Such a dispute must be resolved by a jury.

Defendant next argues its RFP response contains forward-looking statements that Plaintiffs could not reasonably rely on, as they were not promises or guarantees. (Doc. 170, p. 43.) Defendant previously raised this argument in a Motion to Dismiss, but the Court rejected it:

> Defendant's statements explained its capabilities, equipment, and software, and some elements of those assertions were verifiable. Parties must be able to rely on negotiation statements such as these, at least to some extent. Additionally, reliance on Defendant's representations was sensible, as only Defendant[] would understand what it could provide. For these reasons, the statements at issue are actionable and the fraud claim is properly pleaded.

(Doc. 71, p. 17.) Defendant provides nothing to alter the Court's previous analysis, so it reaches the same conclusion: Defendant's RFP response, as discussed above, describes verifiable characteristics about its own and then-existing capabilities, equipment, and software. Whether it was reasonable for Plaintiffs to rely on such statements is a question for the jury to decide.

Defendant also argues two other categories of alleged statements and omissions—those regarding (1) its readiness for Go Live at the Tracy warehouse and (2) aspects of Defendant's IT

resources—cannot support Plaintiffs' claims, as Defendant either disclosed such information or had no duty to do so. (Doc. 170, pp. 43-48.) Again, the Court concludes the parties' disputes must be decided by a jury. For example, Defendant argues that in the period leading up to the Go Live date, it shared all potential issues with Plaintiffs regarding the status of the project and Plaintiffs proceeded with the Go Live date knowing of the risks associated with opening the Tracy warehouse on August 6. Plaintiffs respond by pointing to emails from Defendant's employees, which at times warn Plaintiffs about potential problems at the warehouse, at other times reassure Plaintiffs the problems would be resolved, and at yet other times share among themselves deep concerns and reservations about the feasibility of the warehouse's operations and Go Live date. (*E.g.*, Docs. 203-14, 203-100, 203-104, 203-123.) With respect to the IT resources, Plaintiffs argue Defendant failed to disclose a variety of material information, such as the fact IT resources were reassigned from the Tracy facility to another facility and the lack of experience its IT department had with the Nulogy software. (Doc. 207, pp. 131-133.) Defendant responds with evidence that it disclosed the state of IT preparations, including the fact that IT preparations were behind schedule in part due to construction delays at the Tracy facility. (*E.g.*, Docs. 170-33, 170-36, 170-40, 170-46.) Such a dispute cannot be resolved by the Court and must be decided by a jury.

**b. Breach of Contract**

Count One asserts a single breach of contract claim, alleging Defendant breached both (1) an express contract—i.e., the parties' Services Agreement which expired by its terms on June 30, 2018, and (2) an implied agreement—i.e., an agreement the parties formed through their continued conduct and performance after the Services Agreement expired. (Doc. 33, ¶¶ 151-167.) "The essential elements of a breach of contract claim are: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages

to plaintiff." *Hamilton v. Greenwich Invs. XXVI, LLC*, 126 Cal. Rptr. 3d 174, 183 (Cal. App. Ct. 2011).

Defendant moves for summary judgment as to the parties' express contract, first arguing Plaintiffs cannot prove they incurred any damages caused by breaches that occurred before the Services Agreement expired on June 30, 2018. (Doc. 170, pp. 48-50.) The Court disagrees. Plaintiffs assert one claim, alleging that the breach of the express contract and breach of the implied contract caused damages. Plaintiffs' claim alleges Defendant breached the express contract "by, for example, failing to provide sufficient labor and failing to adequately train the labor it did provide." (Doc. 33, ¶ 158.) The Record contains evidence Defendant struggled to hire and train workers before June 30, (*e.g.*, Docs. 203-50, 203-56), and failed to devote sufficient resources to the IT component of the project, (*e.g.*, Docs. 203-6, 203-35, 203-40), thus creating genuine material issues about whether Defendant breached the express Services Agreement before it expired. After it expired, Plaintiffs' theory is the parties formed an implied agreement containing the same terms, such that the two agreements in effect amounted to a continuation of the same contractual obligations. The Record contains evidence Defendant breached those contractual obligations when the Tracy warehouse struggled to process orders and ship products, (*e.g.*, Doc. 203-74), thereby causing Plaintiffs damages. Accordingly, the jury could find Defendant's breaches—starting with its pre-June 30 struggles—were a substantial factor in Plaintiffs' damages. *See Valenzuela v. ADT Sec. Servs., Inc.*, 820 F. Supp. 2d 1061, 1073 (C.D. Cal. 2010), *aff'd* 475 F. App'x 115 (9th Cir. 2012) ("[T]he test for causation in a breach of contract action is whether the breach was a 'substantial factor' in causing the damages," a term which means "more than a slight, trivial, negligible, or theoretical factor in producing a particular result."). Thus, Plaintiffs

are not required to prove damages occurred before the Services Agreement expired on June 30, 2018.

Defendant also argues the Lindt Manufacturers cannot assert third-party beneficiary claims for breach of the Services Agreement, because that agreement's sole parties are Lindt and Defendant and the agreement expressly states it does not benefit third-parties.[5] (Doc. 170, pp. 54-55.) Defendant previously raised this argument in a Motion to Dismiss, and the Court rejected it, stating that "even the cases cited by Defendant fail to establish [the Service Agreement's language] fully bars third-party beneficiary claims" and that "the Court must determine who the parties intended to be beneficiaries of the contract by reading the agreement as a whole." (Doc. 71, pp. 8.) The Court continued:

> Having concluded the explicit contract consists of the LOI Amendment and the incorporated Services Agreement, the Court looks to a variety of documents to determine who the parties intended to be a beneficiary to the contract. Because the LOI and LOI Amendment resulted from the RFP, the Court considers it first. The RFP explicitly stated Lindt NA and the Lindt Manufacturers were "soliciting proposals to select Logistics Service Provider(s) for multiple sites in our North American distribution network." Because the Tracy facility would serve Lindt NA as well as the Lindt Manufacturers, the Court concludes the parties' agreement envisioned Defendant would provide benefits (e.g., start-up and logistics services) to all those entities. Thus, the parties intended both Lindt NA and the Lindt Manufacturers to be beneficiaries of the contract.

(Doc. 71, pp. 8-10 (cleaned up).) Defendant provides nothing to alter the Court's previous analysis, so it reaches the same conclusion: Both Lindt and the Lindt Manufacturers are beneficiaries of the contract, as Defendant's handling of the Lindt Manufacturers' products at the Tracy warehouse was central (not incidental) to the agreement, and contractual language stating

[5] The parties agree that, although the original 2007 Services Agreement was a contract between Ghirardelli and Defendant's predecessor Arnold Logistics LLC, subsequent events—including the LOI Amendment—made the Services Agreement a contract between Lindt and Defendant, such that the Lindt Manufacturers are third-parties to it.

Lindt will "manage" the relationship does not alter this conclusion. Defendant's argument is not grounds for summary judgment.

Turning to Plaintiffs' claim asserting breach of an implied agreement, Defendant argues the Services Agreement—which expressly states it can only be modified in writing—precludes the parties from creating an implied agreement through their conduct. (Doc. 170, pp. 50-52.) Defendant previously raised this legal argument in its Motion to Dismiss, and the Court denied it:

> "When an agreement expires by its terms, if, without more, the parties continue to perform as theretofore, an implication arises that they have mutually assented to a new contract containing the same provisions as the old." *Autohaus Brugger, Inc. v. Saab Motors, Inc.*, 567 F.2d 901, 915 (9th Cir. 1978). Here, after June 30, 2018, almost all obligations under the LOI Amendment, and the Services Agreement ceased. Despite this, the parties continued working together. Characterizing the events as termination of a contract and creation of a new agreement is plausible and permissible under the law, notwithstanding the fact the written agreements could only be amended in writing.

(Doc. 71, p. 7 (cleaned up).) Defendant provides nothing to alter the Court's previous analysis, so it reaches the same conclusion based on the Record now presented.

Relatedly, Defendant argues there was no mutual assent or "meeting of the minds" as to any implied agreement's material terms, particularly as to what key performance indicators applied to Defendant. (Doc. 170, pp. 53-54.) The Court denies summary judgment on this basis. "Whether or not an implied contract has been created is determined by the act and conduct of the parties and all the surrounding circumstances involved and is a question of fact." *Del E. Webb Corp. v. Structural Materials Co.*, 176 Cal. Rptr. 824, 834 (Cal. Ct. App. 1981). "[W]hether the parties had an express agreement, an implied agreement, or no agreement is a matter that a jury will need to determine." *Freyr Holdings, LLC v. Legacy Life Advisors, LLC*, 2012 WL 13006017, at *8 (C.D. Cal. June 12, 2012). There is evidence that, after the Services Agreement expired on June 30, 2018, the parties continued to work together at the Tracy warehouse: in particular,

Defendant continued to provide Plaintiffs warehouse services and send them invoices; at times Defendant sent Plaintiffs metrics about its warehouse performance; and throughout the parties continued to negotiate about a definitive agreement. Such evidence creates genuine material disputes for the jury about whether the parties formed an implied agreement—and, if so, the agreement's terms and whether Defendant breached them—precluding summary judgment.

**c. Negligence**

Count Three asserts a negligence claim, expressly alleging it "in the alternative" to Plaintiffs' contract claim. (Doc. 33, ¶¶ 184, 185-191.) Defendant argues this claim is barred by the economic loss rule, which states that, "[i]n general, there is no recovery in tort for negligently inflicted purely economic losses, meaning financial harm unaccompanied by physical or property damage." *Sheen v. Wells Fargo Bank, N.A.*, 505 P.3d 625, 632 (Cal. 2022). Here, Defendant argues Plaintiffs' negligence claims fails because they have not produced evidence of any physical injury or property damage. (Doc. 71, pp. 56-57.) Defendant previously moved to dismiss based on the economic loss doctrine, but the Court rejected its arguments because "Plaintiffs' negligence claim is viable only if there is no contract theory available. At this stage of the proceedings, the Court finds Plaintiffs' alternative negligence claim is not barred by the economic loss doctrine." (Doc. 71, pp. 12-13.) Defendant provides nothing to alter the Court's previous analysis, so it reaches the same conclusion: At this juncture Plaintiffs' alternative negligence claim can go forward, and given this ruling, the Court need not address the parties' arguments about the scope of the economic loss doctrine or exceptions to it. Defendant's arguments are not grounds for summary judgment.[6]

---

[6] The parties do not address at what point Plaintiffs must elect between their contract claim and alternative negligence claim. Absent authority to the contrary, the Court, at the pretrial conference, intends to require Plaintiffs to elect the theory (contract or negligence) on which they intend to proceed at trial.

### d. Violation of California's Unfair Competition Law

Count Six—which is asserted by Plaintiff Ghirardelli only—alleges violation of California's UCL. (Doc. 33, ¶¶ 231-238.) "A UCL action is an equitable action by means of which a plaintiff may recover money or property obtained from the plaintiff or persons represented by the plaintiff through unfair or unlawful business practices." *Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal. 4th 163, 173, 999 P.2d 706, 712 (2000) (discussing Cal. Bus. & Prof. Code, § 17200 *et seq.*). "[U]nder the UCL, prevailing plaintiffs are generally limited to injunctive relief and restitution." *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003). "A UCL action is equitable in nature; damages cannot be recovered." *Id.* Defendant argues Ghirardelli cannot use its UCL claim to recover the types of damages addressed by Plaintiffs' damages expert—i.e., lost profits, extraordinary business expenses, and excess third-party logistics management costs—and no evidence of any other damages exists. (Doc. 170, pp. 57-58.)

The Court denies summary judgment on this basis. The Record contains evidence Ghirardelli paid Defendant millions of dollars. "Reimbursing [a plaintiff for the amount it paid] would be a classic form of restitution under the UCL[.]" *Quackenbush v. Am. Honda Motor Co., Inc.*, 650 F. Supp. 3d 837, 846 (N.D. Cal. 2023). The authorities cited do not indicate expert evidence is required to prove such damages. Rather, under the UCL, restitution "must be of a measurable amount to restore to the plaintiff what has been acquired by violations of the statutes, and that measurable amount must be supported by evidence." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015). "In calculating damages, here restitution, California law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." *Id.* at 989.

For these reasons, Defendant's Motion for Summary Judgment is denied.

### e. Limitation on Damages

Defendant also argues that Plaintiffs' claims for damages must be limited in two ways. First, Defendant contends Plaintiffs cannot recover any consequential damages after January 1, 2019. Defendant relies on the Warehouse Receipt it sent Plaintiffs in December 2018, because it stated Defendant was not liable for any consequential damages and Defendant advised Plaintiffs this Warehouse Receipt would be effective January 1, 2019. Given that Plaintiffs continued to work with Defendant at the Tracy warehouse, Defendant argues they accepted the Warehouse Receipt such that it now limits their recovery of damages. (Doc. 170, pp. 58-64.)

The Court denies summary judgment on this basis. As discussed above, there is evidence that, after the Services Agreement expired, the parties' conduct created a new implied agreement containing the same terms. Against that backdrop, the jury could find that Defendant's Warehouse Receipt was an offer to alter the terms of the parties' implied agreement, and Plaintiffs responded by sending two emails expressly rejecting that offer, (Docs. 203-18, p. 2; Doc. 203-19, p. 2). Such evidence creates genuine material disputes for the jury about whether the Warehouse Receipt binds Plaintiffs, precluding summary judgment.[7]

Second, Defendant argues Plaintiffs cannot recover damages arising from transitioning to another services provider (Metro), specifically targeting amounts that Plaintiffs' damages expert calculated and described as: (1) $1,523,090 for the total extraordinary expense associated with Plaintiffs' transition to Metro; and (2) $11,699,899 for excess ongoing third-party logistics management costs representing the alleged incremental cost difference between Defendant's rates and the higher rates Metro charged for the period of June 2019 to July 2023. Plaintiffs' damages

---

[7] The Court also denies Defendant's summary judgment on its related argument that all of Plaintiffs' claims for consequential damages fail because their damages expert did not distinguish between damages incurred before and after January 1, 2019. (Doc. 170, pp. 62-64.)

expert calculated these damages under a "benefit of the bargain" theory. Defendant argues this damages theory fails as a matter of law because, after the Services Agreement expired, the parties allegedly had only an implied agreement that was of indefinite duration and terminable at will, and such an agreement does not create the expectation of any benefit and thus cannot support "benefit of the bargain" damages. (Docs. 170, pp. 64-66.) Defendant cites supporting law. *See* Cal. Com. Code § 2309 (stating contract of indefinite duration "may be terminated at any time by either party"); *Varni Bros. Corp. v. Wine World, Inc.*, 41 Cal. Rptr. 2d 740, 746 (Cal. Ct. App. 1995) (discussing and applying Cal. Com. Code § 2309); *Reeves v. Hanlon*, 95 P.3d 513, 519 (Cal. 2004) (citing the Restatement (Second) of Torts § 768's commentary to explain that, if a contract is terminable at will, then termination of the contract does not breach the contracting party's expectancy of contract benefits). Plaintiffs do not directly rebut these points, instead contending it can recover such damages under its fraud and negligence claims.

The Court concludes Plaintiffs cannot recover benefit-of-the-bargain damages under their breach of contract claim, based on the law discussed above. The Court also concludes Plaintiffs cannot recover such damages under their fraud claim, as they do not argue Defendant is a fiduciary. *See EduMoz, LLC v. Republic of Mozambique*, 2015 WL 13697385, at *14 (C.D. Cal. Apr. 20, 2015) ("Courts applying California law generally agree that, with the possible exception of fraud by a fiduciary, Civil Code §§ 1709 and 3333 do not permit recovery of benefit of the bargain damages."). However, Plaintiffs argue they can recover such damages under their alternative negligence claim, and Defendant does not address this point. (Doc. 226, pp. 176-177.) Given that

the Court determined Plaintiffs' negligence claim can go forward, Defendant is not entitled to a ruling that completely bars benefit-of-the-bargain damages at this time.[8]

### IV. Plaintiffs' Motion for Summary Judgment

Plaintiffs move for summary judgment on the portion of Defendant's counterclaim for conversion which seeks punitive damages. Defendant's conversion claim alleges it continues to own warehousing equipment located at the Tracy warehouse and Plaintiffs have refused to either turn it over or pay for it, entitling them to punitive damages. (Doc. 76, ¶¶ 91-98.) The parties state this counterclaim could be governed by the substantive law of either California or Missouri and cite both, contending they are not materially different for present purposes. (Doc. 181, p. 6 n.1; Doc. 194, p. 32 n.3.) The Court accepts the parties' position and will cite California law for consistency with the above analysis.

"The basic elements of [a conversion claim] are (1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages." *Regent All. Ltd. v. Rabizadeh*, 180 Cal. Rptr. 3d 610, 612 (Cal. Ct. App. 2014). "Exemplary damages are properly awardable in an action for conversion, given the required showing of malice, fraud or oppression." *Haines v. Parra*, 193 Cal. App. 3d 1553, 1560 (Cal. Ct. App. 1987). "[W]here it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." Cal. Civ. Code § 3294(a). "However, entitlement to punitive damages is generally an issue for the trier of fact." *The Nippon Credit Bank v. 1333 N. Cal.*

[8] The Court's inclination to require that Plaintiffs elect between their contract claim and alternative negligence claim at the pretrial conference also applies to this issue.

*Boulevard*, 103 Cal. Rptr. 2d 421, 430 (Cal. Ct. App. 2001); *see also Joeail Williams v. SFC Int'l, Inc.*, 2021 WL 755488, at *3 (W.D. Mo. Jan. 29, 2021) ("Given the uncertainty about what evidence will be introduced at trial, and given the need to consider all the evidence in context, the Court cannot presently declare whether or not Plaintiff can present evidence at trial supporting an award of punitive damages.").

Plaintiffs argue no evidence supports punitive damages because they possess Defendant's property involuntarily. More precisely, they contend Defendant cannot show the oppression, fraud, or malice necessary to recover punitive damages because, when Plaintiffs terminated Defendant's work at the Tracy warehouse in May 2019, Defendant left behind some equipment and ignored Plaintiffs' requests for Defendant to retrieve it, showing Defendant has effectively abandoned the equipment. (Doc. 181.) However, the Record contains evidence that: Defendant owns equipment in the Tracy warehouse which was critical to its operation such that removing it was not practicable or desirable; the parties' negotiations for Plaintiffs to purchase that equipment were not successful, after which Plaintiffs no longer had permission to use it; Plaintiffs nonetheless continue to use the equipment; and Plaintiffs acknowledge they need to pay for the equipment but have never done so. (*E.g.*, Doc. 194-3, pp. 4, 5-6, 7, 9, 19.) Such evidence creates genuine material disputes for the jury and precludes summary judgment on the issue of punitive damages.

## V. Conclusion

The Record contains genuine disputes of material fact for the jury to decide and neither party is entitled to judgment as a matter of law. Defendant's Motion for Summary Judgment, (Doc. 169), is **DENIED**. Plaintiffs' Motion for Partial Summary Judgment, (Doc. 180), is **DENIED**.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
UNITED STATES DISTRICT COURT

DATE: February 6, 2024